## J. E. Glass *v.* Leonard Rauwolf, Appellant.

*Replevin—Fraud—Exchange of real estate for personal property—Delivery of possession.*

In an action of replevin to recover a stock of store goods it appeared that defendant had agreed in writing to exchange his stock of goods for certain real estate belonging to the plaintiff. Defendant claimed that plaintiff had been guilty of fraudulent misrespresentations as to the value of the real estate, and that by these misrepresentations he was induced to make the contract. The evidence was conflicting as to whether the defendant had actually delivered possession of the stock of goods to plaintiff. Both the question of fraud and the question of delivery of possession were submitted to the jury in an adequate charge, and a verdict was rendered for plaintiff. *Held*, that defendant could not have been injured by refusal of a point to the effect that a party has a legal right to refuse performance of a contract which he thinks was induced by fraud.

In such a case it is proper to instruct the jury that their verdict should be for defendant, unless he voluntarily and without trick or artifice practiced upon him delivered possession of the goods, intending at the time to invest plaintiff with the ownership thereof absolutely and unconditionally.

*Replevin—Stay of execution—Exchange of lands for goods.*

In an action of replevin to secure possession of a stock of goods which defendant agreed to exchange for plaintiff's lands, execution will be stayed upon a judgment in favor of plaintiff until the latter duly delivers to defendant the deeds for the land, or deposits them in court for defendant's use.

Argued Oct. 30, 1895. Appeal, No. 140, Oct. T., 1895, by defendant, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1894, No. 524, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, MCCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Replevin to recover a stock of store goods. Before MAGEE, J.

At the trial it appeared that on November 14, 1893, plaintiff

and defendant entered into an agreement, by which defendant, in consideration of a conveyance of certain real estate to him by plaintiff, was to transfer and assign to plaintiff the stock of goods in his store at Braddock. The real estate was valued at $9,100, and it was stipulated that if the appraisement of the goods did not amount to this sum, defendant was to pay to plaintiff the difference in cash. The appraisement amounted to $6,887.41. The appraisement was completed on November 18. The evidence as to whether an actual delivery was made by defendant to plaintiff was conflicting.

The facts relied on by plaintiff as to the delivery of possession were as follows:

*a.* There was, during the taking of the appraisement on Friday, a sale made amounting to about fifteen cents. The cash was brought to Rauwolf and he inquired whether it was for goods already inventoried or not, and being told that it was, directed that it be given to Glass, and on Saturday there was another small transaction of the same character.

*b.* About the time of the conclusion of the appraisement there was a conversation among those present as to at whose risk the stock would be in case of fire. The opinion was expressed that it would be Glass', and it was alleged, although Rauwolf denied it, that he expressed the same opinion.

*c.* Two insurance policies on the stock were on Saturday evening assigned to Glass in Braddock. (This was, as Rauwolf says, in anticipation of closing the contract and with the understanding that they were to be retransferred if the trade fell through.)

*d.* Glass obtained one of the two sets of keys of the store when it was closed Saturday evening. (Rauwolf claims that he did not know that Glass had them, but supposed that the boy who generally closed the store had them that night.)

The defendant contended and offered evidence to show that plaintiff had fraudulently misrepresented the value of his real estate.

Plaintiff's points were among others as follows:

2. That if the jury find that there was no misrepresentation on the part of the plaintiff as to the value, character or situation of the lands to be conveyed by him to the defendant the written agreement of November 14, 1893, in evidence, is the

contract between the parties and binding upon both. *An-swer:* This point is affirmed. [1]

3. If the jury believe that, in pursuance and in performance of the contract between plaintiff and defendant, dated November 14, 1893, the stock of goods in dispute in this case was duly appraised and a valuation placed thereon by the defendant and Mr. Anderson, acting as the plaintiff's appraiser, which valuation was completed on November 18, 1893, and that upon the latter date, after the valuation had been completed, the key to the storeroom containing the property in dispute was delivered by the defendant to the plaintiff, or that said key was taken into the possession of the plaintiff with the knowledge and consent of the defendant, and that the defendant assigned and delivered to the plaintiff the policies of insurance upon said property, and allowed and directed the plaintiff to receive the proceeds of sale of an article of said property after it had been appraised, then the right of possession and ownership of the property in dispute legally passed to the plaintiff on November 18, 1893, although the defendant had not then received any part of the consideration which plaintiff was to give him for said property; and thereafter the defendant had no legal ownership in or right of possession of the property in dispute, and was legally estopped from any right to interfere with the plaintiff's possession and use of said property. *Answer:* This point is affirmed. [2]

4. If the jury find that the ownership and right of possession of the property in dispute passed from the defendant to the plaintiff on November 18, 1893, and that the defendant on November 20 or 21, 1893, repossessed himself of said property without the consent of the plaintiff, and has ever since deprived the plaintiff of the possession and use of said property, then the verdict should be for the plaintiff for a sum equal to the value of said property at the date when defendant repossessed himself of the same, together with damages for the unlawful detention thereof by the defendant. *Answer:* This point is affirmed. [3]

5. The ordinary rule for the measure of damages to be allowed for the unlawful detention of property in actions of replevin for the same is six per cent interest per annum on the value of said property from the date of its unlawful taking to

the date of the verdict; but whenever the unlawful taking of property is attended with outrage, oppression and vindictiveness on the part of the defendant, the jury may allow additional damages to the plaintiff as punishment of the defendant for such outrage, oppression or vindictiveness. *Answer:* This point is affirmed. [4]

6. That when a written contract plainly expresses the intent of the parties without any uncertainty and indicates thus the whole engagement without any uncertainty, it cannot be contradicted or varied by parol evidence, except where there was fraud, accident or mistake in the creation of the instrument itself, and the evidence of either of these must be clear, precise and indubitable, and such as would satisfy a chancellor that the contract should be set aside on the hearing of a bill for that purpose. *Answer:* This point is affirmed. [5]

Defendant's points were among others as follows:

(1) Unless the defendant, on Saturday evening, November 18, 1893, voluntarily delivered to the plaintiff the absolute and unconditional possession of the stock of goods in controversy, without any fraud, trick or artifice practiced upon him by the plaintiff, then this suit is in effect a proceeding to enforce specific performance of the contract of November 14, 1893. [In such case, the time for delivery of possession under the contract not having arrived, the plaintiff was not in a position to claim he had a lawful right to delivery of possession on that Saturday evening.] And if the jury find that the defendant's execution of the said contract was induced by representations of the plaintiff as to the values of the real estate to be conveyed by it, or as to material matters involving such values, which representations were false in fact, whether the defendant knew their falsity or not, he had no lawful right to possession on the following Monday or Tuesday, when the deeds were tendered as alleged by the plaintiff. *Answer:* This point is affirmed, that portion of the point which I have inclosed in brackets having been omitted therefrom. [6]

The court erred in omitting to affirm the following portion of defendant's first point: " In such case, the time for delivery of possession under the contract not having arrived, the plaintiff was not in a position to claim he had a lawful right to delivery of possession on that Saturday evening." [7]

6. A man has a legal right to refuse to perform a contract for the purchase of real estate, if in good faith he believes he has been dealt with unfairly or with false representations as to matters material, leaving himself of course responsible for damages for his refusal, in a proper suit at law; and if the jury find that under the evidence in this case, nothing more has been established than such a refusal by the defendant to perform the contract in evidence, believing in good faith that he was being overreached and deceived in the negotiations which led to his execution of it, then the plaintiff's cause of action has been misconceived, he cannot recover in this suit, and the verdict should be for the defendant. *Answer:* This point I decline to affirm. [8]

2. The plaintiff's case, as he has presented it, must stand or fall upon his alleged possession acquired on Saturday evening, November 18, 1893. It is shown by plaintiff's witness, Mr. Prescott, the notary, that the deeds for the real estate for the conveyance of which the stock of goods in controversy was the consideration, were not executed and acknowledged and ready for delivery until Monday, November 20, 1893; therefore, if the jury so find, the plaintiff had no lawful right to take possession of the goods on that Saturday evening, unless such possession was then voluntarily delivered to him by the defendant, the defendant at the time intending to pass title thereto to the plaintiff, and waiving the delivery of the deeds until the following Monday. *Answer:* This point is affirmed.

3. If the jury find that the deeds for the real estate to be conveyed by the plaintiff to the defendant, under the contract of November 14, 1893, were not executed and acknowledged and ready for delivery until Monday, November 20, 1893, and that the defendant, on Saturday 18, 1893, did not voluntarily deliver to the plaintiff the possession of the stock of goods, intending thereby at the time to pass title thereto absolutely and unconditionally to the plaintiff, waiving the delivery of the deeds until the following Monday, the plaintiff cannot recover, and the verdict should be for the defendant. *Answer:* This point is affirmed.

4. If the jury should find that the deeds for the real estate to be conveyed under the contract, were not executed and acknowledged and ready for delivery until Monday, November 20,

1893, and that on Saturday evening, November 18, 1893, the plaintiff obtained possession of the stock of goods from the defendant, and such possession was obtained by fraud, trick or artifice, then such possession obtained on Saturday evening, and held on Monday and Tuesday, when the deeds were tendered as alleged, count for nothing; the defendant had the right to repossess himself of the stock, and the verdict should be for the defendant. *Answer:* This point affirmed.

Verdict and judgment for plaintiff for $7,335.09. Defendant appealed.

*Errors assigned,* among others, were (1–8) above instructions quoting them.

*W. B. Rodgers, Boyd Crumrine* and *Wise & Minor* with him, for appellant.—Cited on the question of delivery: Lester v. McDowell, 18 Pa. 91 ; cited on the question of fraud : Heydrick v. Hutchinson, 165 Pa. 208 ; Howell v. Mellon, 169 Pa. 138.

*D. F. Patterson, James W. Prescott* and *W. W. Thomson* with him, for appellee.

OPINION BY MR. CHIEF JUSTICE STERRETT, Jan. 6, 1896 :

One of the two main questions of fact presented by the testimony, in this action of replevin, was whether, in procurement of the agreement for exchange of defendant's stock of store goods for certain real estate of the plaintiff, misrepresentation and fraud were practiced by the latter ? The other was whether the goods were actually delivered by the defendant to the plaintiff, pursuant to the agreement? Both of these questions were submitted to the jury on sufficient evidence in a fair and adequate charge of which defendant has no just reason to complain. The verdict is necessarily predicated of their finding that there was no fraud, and also that the stock of goods was delivered to plaintiff according to contract. In view of these findings of fact, defendant could not have been injured by the refusal of his last point for charge, which was to the effect that a party has a legal right to refuse performance of a contract which he thinks was induced by fraud,—even if his point had been properly

drawn.   The same remark is applicable to defendant's contention that the affirmance of plaintiff's second point ignored the question of defendant's intention to pass title to the property by the acts specified in that point.   If this was error, it was cured by the subsequent affirmance of defendant's second, third, and fourth points, wherein the jury were in effect instructed that their verdict should be for defendant, unless he voluntarily and without trick or artifice, practiced upon him, delivered possession of the goods in question, intending at the time to invest plaintiff with the ownership thereof absolutely and unconditionally.

When considered in connection with other parts of the charge, the remaining instructions complained of are free from error. There appears to be nothing in any of these specifications that requires discussion.   We find nothing in the record, as presented to us, that calls for a reversal of the judgment; but, inasmuch as it does not appear that plaintiff's tender of performance, on his part,—by delivery of good and sufficient deeds of conveyance of the lands which he agreed to give in exchange for defendant's stock of goods,—was properly kept up, he should not be permitted to issue execution on the judgment until such deeds are duly delivered to the defendant or deposited in the court below for his use.

Judgment affirmed; and it is ordered that no execution shall issue thereon, until the court below is satisfied that the plaintiff has performed his part of the contract as above stated, nor until leave of said court first obtained.